UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| BRIDGET MILLER,<br>  Plaintiff, | :<br>:<br>: |
| v. | :    Civ. Action 03:05CV00202(PCD) |
| YALE-NEW HAVEN HOSPITAL,<br>  Defendant. | :<br>:<br>: |

**RULING ON MOTION FOR SUMMARY JUDGMENT**

  Pending is Defendant Yale-New Haven Hospital's ("YNH") Motion for Summary Judgment. [Doc. No. 49.] In this action, Plaintiff alleges race and disability discrimination. In its motion for summary judgment, Defendant asserts an absence of evidence of racial discrimination and the lack of any disability on the part of the Plaintiff as defined within the purview of any of the statutes Plaintiff invokes. Defendant argues that there is a clear evidentiary basis for Plaintiff's termination for good cause and that no differential treatment occurred on which Plaintiff could validly prove discrimination based on a disability. Plaintiff concedes the lack of evidence of racial discrimination and offers a withdrawal of that claim. To the extent race discrimination is alleged, Defendant's motion is granted with respect to Plaintiff's claim of race discrimination, and summary judgment is entered for the Defendant on that issue.

  Defendant also moves for summary judgment on Plaintiff's disability claim brought under the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 et seq. ("RA"), and the Americans with Disabilities Act of 1990, 42 U.S.C. §§ et seq. ("ADA"). Defendant asserts that Plaintiff's termination was based on her unexcused absence from work from May 8, 2003 to July 11, 2003, the lack of substantiation of her claim of an incapacity to work, and her use of drugs without

1

participation in any rehabilitation program during her absence. Defendant offers a record to support its claim of a termination on legitimate, non-discriminatory grounds and argues that Plaintiff has made no showing that she is afforded protection under either law. For the foregoing reasons, Defendant's motion for summary judgment is **granted** in its entirety.

## I.   FACTS

The recited facts are drawn from Defendant's Local Rule 56(a)(1) Statement ("LRS") [Doc. No. 51], all of which Plaintiff has admitted except as to her drug use, which she admits to have occurred only during the month of May, 2003, and at the start of her drug treatment program. (Pl.'s LRS ¶ 54.) She claims ambiguity in her own testimony as to her drug use during treatment, which does not create an issue of fact where she claimed no knowledge or recall. (Id.) Her concession that her drug use could have continued to August, 2003 is deemed a fact. (Pl.'s Opp. to Def.'s Mem. Supp. Summ. J. 3-4, Ex. 1.)

Plaintiff began working for YNH on July 29, 2002. (Def.'s LRS ¶ 1.) She had an injury interruption from December 6, 2002, until April 14, 2003, when YNH's Occupational Health Services ("OHS") cleared her to work again without restriction. (Id. ¶¶ 7, 9). At that time Plaintiff was using cocaine, but she did not so advise OHS. (Id. ¶¶ 9, 40.) On May 8, 2003, she did not report for work, and she notified her supervisor by voice mail that she was in an Emergency Room. (Id. ¶¶ 10, 12.) The following day, Plaintiff's sister reported her drug abuse and need for drug rehabilitation to Plaintiff's supervisor at YNH. (Id. ¶ 13.) This was the first YNH was informed of Plaintiff's existing drug problem. Her sister was advised of the need for Plaintiff to inform YNH on the anticipated duration of her absence and to provide medical documentation for any absence that lasted more than three days. (Id. ¶ 14.) Under YNH policy,

of which Plaintiff was aware, an unauthorized absence longer than three days without medical documentation constituted a voluntary resignation.  (Id. ¶ 74; Miller Dep. 140:2-11.)  YNH policy also required OHS to clear Plaintiff to return to work, a process which also required medical documentation and of which Plaintiff was aware from her prior medical leave.  (Def.'s LRS ¶ 75.)

About one week after the ER visit, Plaintiff spoke directly about her absence with her supervisor, who informed Plaintiff that she had to document the entirety of her absence with a doctor's note in order for OHS to clear her to return to work.  (Def.'s LRS ¶ 15.)  Plaintiff contacted her supervisor on June 13, 2003, stating her wish to return to work, and was again told about the need for medical documentation and OHS clearance in order to do so.  (Id. ¶ 16.)  On June 16, 2003, OHS refused Plaintiff's request to return to work due to the absence of the required documentation.  (Id. ¶ 17.)  The documentation that Plaintiff had provided to OHS did not cover her entire absence and did not confirm that she had a disability.  (Id. ¶ 18.)  In a June 30, 2003 letter, Plaintiff was again informed of the requirement and was given a July 8, 2003 deadline for compliance.  (Id. ¶ 20.)

When Plaintiff did not comply with the July 8 deadline, her supervisor initiated the process for terminating Plaintiff's employment.  (Def.'s LRS ¶ 20.)  Plaintiff was called to a meeting on July 11, 2003 to discuss her status, but she failed to attend, claiming illness.  (Id. ¶¶ 20, 22.)  Later that day, the Director of Environmental Services and the Manager of Employee Relations decided to terminate her employment due to unauthorized absence beginning May 8, 2003 and failure to provide documentation of an inability to work for that period due to a medical condition.  (Id. ¶ 23.)  Plaintiff was so informed by phone and letter.  (Id. ¶¶ 24-25.)  She invoked

the three-step grievance procedure, which culminated in a panel hearing, one of whose members was selected by Plaintiff. (Id. ¶¶ 26-28, 34-35.) The panel sustained her termination on the basis that her absence was unauthorized due to her failure to provide medical documentation showing that her absence was medically necessary. This failure resulted in her not having shown that she was unable to work and therefore constituted abandonment of the employment. (Id. ¶ 38.) During the grievance process, Plaintiff wrote in a letter that she had failed to make "every reasonable effort" to learn of and follow the proper procedures for medical leaves of absence. She also conceded that she had not provided "documentation covering [her] entire leave of absence" due to her condition and treatment, during which she was "depressed, sluggish, not motivated and... high." (Id. ¶ 33.)

   Plaintiff has described her drug use as beginning sometime in December of 2002 and continuing through April 2003. (Def.'s LRS ¶ 39.) Plaintiff admits that, although OHS cleared her return to work, she was using drugs throughout her medical leave of absence and upon her return to work. (Id. ¶¶ 39, 40.) Plaintiff's drug abuse prompted her ER visit on May 9, 2003, when she was referred for treatment to South Central Rehabilitation Center ("SCRC"). (Id. ¶¶ 42, 43.) In turn, Plaintiff was referred to the APT Foundation, which scheduled an orientation and evaluation. (Id. ¶¶ 44, 45.) After an evaluation, Plaintiff was enrolled in an outpatient treatment program starting June 11, 2003. (Id. ¶¶ 46, 47.) However, Plaintff failed to show up at the program until June 23, 2003. (Id. ¶¶ 48, 49.) Between then and July 8, 2003, she missed at least four if not six sessions. (Id. ¶ 50.) On July 14, 2003, she agreed to commit to attending the program and began to actively participate in it. (Id. ¶ 51.) No physician ever certified plaintiff as unable to work during this period; rather, Plaintiff's physician noted that it was not necessary for

her to leave her position. (Id. ¶ 52.) Her physician described her as choosing to focus on treatment. (Phys.'s Cert. of Claimant's Health, Aug. 25, 2003, Ex. 1 to Def.'s Mem. Supp. Summ. J.) Plaintiff has described herself as not feeling able to work during this period due to her drug addiction, noting that "everybody said I could work." (Def.'s LRS ¶ 53; Pl.'s Dep. 137: 5.) Although her LRS denies it, she tested positive for cocaine on July 21, 2003. (Def.'s LRS ¶ 54; Pl.'s Dep. 137:11-13.)

Plaintiff's discrimination claim arises from her allegation that she received treatment unequal to that accorded another YNH employee, Robert Fisher. Plaintiff alleges that, while she was discharged for seeking help from substance abuse, Fisher was rehired after being fired for stealing drugs from the hospital. (Compl. at 7.) When YNH rehired Fisher after his termination, he was employed in a lower level position with a reduction in pay. (Def.'s LRS ¶ 69.) Plaintiff conceded that she had no personal knowledge of the alleged incident with Mr. Fisher and attributed it to rumor, the source of which she refused to identify. (Id. ¶¶ 70, 71.) According to YNH, Mr. Fisher was terminated for drug abuse, not theft, and was rehired after apparently successful rehabilitation but at lower pay with lesser responsibility. (Id. ¶¶ 59-69.) The record reflects nothing to suggest, as required by the law, that Fisher's situation–that is, his compliance with YNH's employment procedures and his rehabilitation–was comparable to Plaintiff's.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). No genuine issue of material fact exists and summary

judgment is therefore appropriate when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). A material fact is one which "might affect the outcome of the suit under the governing law" and an issue is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). Importantly, however, "[c]onclusory allegations will not suffice to create a genuine issue." Delaware & H. R. Co. v. Conrail, 902 F.2d 174, 178 (2d Cir. 1990).

"A party opposing a properly brought motion for summary judgment bears the burden of going beyond the pleadings, and 'designating specific facts showing that there is a genuine issue for trial.'" Amnesty Am. v. Town of W. Hartford, 288 F.3d 467, 470 (2d Cir. 2002) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)). In determining whether a genuine issue has been raised, all ambiguities are resolved and all reasonable inferences are drawn against the moving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); Quinn v. Syracuse Model Neighborhood Corp., 613 F.2d 438, 445 (2d Cir. 1980). Determinations of the weight to accord evidence or assessments of the credibility of witnesses are improper on a motion for summary judgment as such are within the sole province of the jury. Hayes v. New York City Dep't of Corr., 84 F.3d 614, 619 (2d Cir. 1996). "If reasonable minds could differ as to the import of the evidence . . . and if . . . there is any evidence in the record from any source from which a reasonable inference in the nonmoving party's favor may be drawn, the moving party simply cannot obtain a summary judgment." R.B. Ventures, Ltd. v. Shane, 112 F.3d 54, 59 (2d Cir. 1997) (internal citations omitted); see also Sologub v. City of New York, 202 F.3d 175, 178 (2d Cir. 2000) ("When reasonable persons applying the proper legal standards could differ in

their responses to the questions raised on the basis of the evidence presented, the question is best left to the jury.").

## III. DISCUSSION

Defendant claims Plaintiff has failed to establish a prima facie case of disparate treatment because she has not shown that she has a disability covered by either the RA or the ADA. A prima facie case of discrimination requires minimal evidence that Plaintiff is a qualified individual with a covered disability and that she was discriminated against because of her disability. Buckley v. Consolidated Edison Co. of New York, Inc., 127 F.3d 270, 272 (2d Cir. 1997) (ADA case); D'Amico v. City of New York, 132 F.3d 145, 150 (2d Cir. 1998) (RA case). However, both the ADA and RA exclude employees "currently engaging in the illegal use of drugs" from their definitions of "disability." 42 U.S.C. § 12114(a); 29 U.S.C. § 705(20)(C)(i). An employer cannot base an adverse employment decision on an employee's disability if she "has overcome past substance abuse problems," id., but an employee who is a "current substance abuser" at the time of termination is not protected by either statutory framework. Teahan v. Metro-North Commuter R.R. Co., 951 F.2d 511, 518 (2d Cir. 1991).

In this case, Plaintiff's qualification for the job and the fact of an adverse employment action, i.e. her termination, are not disputed. She has not offered evidence, however, to establish the crucial fact that she was disabled. In response to Defendant's argument, Plaintiff does not claim that she was not a current user when terminated but that "the record reflects ambiguity as to the timing of plaintiff's drug use and the date of her termination." (Pl.'s Opp. 3.) However, as discussed above, Plaintiff was using cocaine during her treatment, which continued through July, 2003. As late as July 21, 2003, she tested positive for cocaine use. (Pl.'s Dep. 137:11-13.) By

her own testimony, taken as an admission of fact, she "could have been [on drugs in] August, 2003." (Id. 105:16-20.) The record is sufficient to meet Defendant's claim of no genuine issue of material fact as to whether Plaintiff was engaged in drug use as of July 11, 2003, the date of Defendant's termination letter. This fact alone disqualifies her from being considered "disabled" within the meaning of the RA or the ADA. See Hoffman v. MCI Worldcom Commc'ns, Inc., 178 F. Supp. 2d 152, 155 (D. Conn. 2001); Jurman v. The Coca-Cola Bottling Co. of New York, 2003 WL21767506, at *1 (S.D.N.Y. July 31, 2003); Gilmore v. Univ. of Rochester Strong Mem'l Hosp. Div., 384 F. Supp. 2d 602, 610-11 (W.D.N.Y. 2005) (explaining that "drug addiction, like alcoholism, is recognized as a disease that can be disabling, but that current drug use disqualifies a person from protection under these statutes"). Moreover, Plaintiff has not established that her drug treatment disabled her from working. Rather, the record shows that her physician did not find it necessary for her to leave her job in order to continue treatment. When explaining her inability to work while undergoing treatment, Plaintiff did not offer a medical explanation but instead described her problem as due to her being "depressed, sluggish, not motivated, and..... high." (Def.'s LRS, Ex. 1 ¶ 29; Pl.'s Dep. 111-112.) She noted herself, "[E]verybody said I could work." (Pl.'s Dep. 137.) Plaintiff has thus failed to meet her burden of proof of a covered disability, and so Defendant is entitled to summary judgment.

   Even if Plaintiff were to have proven a prima facie case of discrimination, her claims would not survive Defendant's summary judgment motion. Under the McDonnell Douglas burden-shifting framework, a Plaintiff's prima facie case creates a presumption of discrimination, and the burden of production then shifts to Defendant to offer a non-discriminatory reason for Plaintiff's termination. If Defendant makes a satisfactory showing, the production burden shifts

8

back to the Plaintiff to show that Defendant's proffered reason was a pretext for discrimination. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Sista v. CDC Ixis N.Amer., Inc., 445 F.3d 161, 169 (2d Cir. 2006). In this case, Defendant YNH has clearly met its burden. The record reflects that Ms. Miller's absence from her job from May 8, 2003 to July 14, 2003 was not authorized in advance or after the fact because Plaintiff, by her own admission, failed to provide the medical documentation of her condition, treatment and disability from work during that period. Because she had been on medical leave in the past, Plaintiff was well aware of the requirement of providing medical documentation to OHS in order to be cleared to return to work. She was also repeatedly reminded of her obligation to provide such documentation up until two weeks before her termination. Even with such reminders, she failed to meet the July 8, 2003 deadline to submit the documentation, and then she failed to show for the July 11 meeting arranged to resolve the problem. According to YNH policy, an unauthorized absence longer than three days constitutes a voluntary resignation. (Def.'s LRS Ex. 1 at 8.) The panel that reviewed Plaintiff's termination grievance–which included a member chosen by Plaintiff–upheld Plaintiff's termination because they found her to have been non-compliant with the medical documentation requirement. These facts provide a satisfactory, non-discriminatory reason for Plaintiff's termination.

   To nevertheless prevail, Plaintiff must prove that Defendant's reason is a "pretext for discrimination" by showing "both that the reason was false, and that discrimination was the real reason." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993). That she has not done. Her evidence merely traces, sketchily, her initial visit to the emergency room, to SCRC for treatment, to APT for an evaluation, and to counseling, all sporadically occurring between May 8 and

August, 2003. She offers no explanation for the lag in getting to APT, the delay in commencing the scheduled program, her absence from counseling sessions, or her failure to attend the July 11, 2003 meeting called to discuss her situation. Most importantly, she does not explain her continued drug use during her treatment per her own admission, the positive drug test taken on July 21, 2003, or her concession that her drug use might have extended into August, 2003. As both Defendant's and Plaintiff's evidence show, YNH repeatedly sought medical confirmation of Plaintiff's condition, treatment, and disability, first by discussing the matter with Plaintiff's sister, then with Plaintiff herself, and finally by repeated written requests for medical documentation. Plaintiff, well aware of YNH policy, repeatedly promised to comply with YNH's requests but never did so. She had numerous opportunities to produce the requisite documentation, which seemingly would have forestalled her termination, there being no evidence to the contrary. The evidence all supports Defendant's legitimate, non-discriminatory reason for Plaintiff's termination, and the grievance panel sustained the termination, further supporting its validity. Furthermore, no evidence has been shown which can fairly be said to sustain an inference of a pretext of discrimination. Plaintiff has not contradicted Defendant's evidence of its motives for its decision and the underlying circumstances. Plaintiff's admission of her drug use at the time of termination sustains the nondiscriminatory basis for the decision. Her failure to offer admissible evidence that credibly raises an inference of unlawful discrimination based on her disability shows no genuine issue of material fact and entitles Defendant to summary judgment.

**IV.   CONCLUSION**

On all grounds raised by Defendant's motion, no genuine issue of material fact has been

shown, and Defendant is therefore entitled to summary judgment on all counts.  Defendant's Motion for Summary Judgment [Doc. No. 49] is **granted,** and judgment shall enter accordingly.

SO ORDERED.

Dated at New Haven, Connecticut,  September 28, 2006.

/s/

PETER C. DORSEY
UNITED STATES DISTRICT JUDGE